# In the United States Court of Federal Claims

No. 01-115C
Filed: November 30, 2005
**FOR PUBLICATION**

| | | |
|---|---|---|
| OMAHA PUBLIC POWER DISTRICT, Plaintiff, v. THE UNITED STATES, Defendant. | * | Just Compensation Clause, U.S. Const. amend. V, cl. 4; Nuclear Waste Policy Act, 42 U.S.C. §§ 10101, *et seq.*; Motion to Dismiss, RCFC 12(b)(6). |

**Alexander D. Tomaszczuk**, Pillsbury Winthrop Shaw Pittman LLP, Washington, D.C., counsel for Plaintiff.

**Marian E. Sullivan**, United States Department of Justice, Washington, D.C., counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN, *Judge***

## BACKGROUND

In 1982, Congress enacted the Nuclear Waste Policy Act, ("NWPA") that required the Government to accept responsibility and provide for the timely disposition of commercial SNF and HLW. *See* 42 U.S.C. §§ 10101, *et. seq*. Pursuant thereto, the Government assumed the legal duty to "provide for the permanent disposal" of SNF and HLW from utilities across the country by providing for the long-term storage of such material. *See* 42 U.S.C. § 10131(a)(4) ("Congress finds that . . . the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and such spent nuclear fuel as may be disposed in order to protect the public health and safety and the environment [.]"). Congress, however, imposed the cost of acceptance and disposal on SNF and HLW "generators" and "owners." *See* 42 U.S.C. § 10131 (a)(4) ("Congress finds that . . . the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel.").

In order to meet this Congressional mandate, the Department of Energy ("DOE" or "the Government") prepared the Standard Contract to establish reciprocal obligations of the parties. *See* 10 C.F.R. § 961.11 (setting forth "the text of the [S]tandard [C]ontract for disposal of spent nuclear

fuel and/or high-level radioactive waste[.]"). Accordingly, the Standard Contracts provided that, in return for the payment of fees from a utility, the Government would commence disposal of SNF and HLW, no later than January 31, 1998, and continue such services until disposal of all SNF and HLW was completed. *See* 42 U.S.C. § 10222(a)(5)(B) ("[I]n return for the payment of fees, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel[.]"); *see also* 10 C.F.R. § 961.11 ("The services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors . . . has been disposed of.").

## RELEVANT FACTS[1]

Omaha Public Power District ("Plaintiff") is a public corporation and political subdivision of the State of Nebraska. *See* Compl. ¶ 2. Plaintiff is the owner and operator of the Fort Calhoun Nuclear Power Station, located approximately 20 miles north of Omaha, Nebraska. *Id.* The Fort Calhoun Nuclear Power Station has generated and continues to generate spent nuclear fuel ("SNF") and high level nuclear waste ("HLW") that are stored at the plant site. *Id.*

On June 30, 1983, Plaintiff entered into a Standard Contract ("the Contract") with the Government. *See* Compl. ¶ 9. Pursuant to the Contract, the Government was required to commence disposal of SNF and HLW generated by Plaintiff before January 31, 1998, and Plaintiff was to pay fees into a Nuclear Waste Fund. *See* Compl. ¶ 7. The fees paid by Plaintiff, and other utilities that had entered into an identical Standard Contracts with the Government, were supposed to cover DOE's costs for disposing of the SNF and HLW. *Id.*

Plaintiff alleges that, despite continually satisfying obligations under the Contract, having paid approximately $76.2 million into the Nuclear Waste Fund and continuing to pay fees of approximately $3.5 million per year, the Government has failed to meet obligations under the Contract. *See* Compl. ¶¶ 9, 10, 21. Plaintiff also alleges that although the Contract called for the Government to begin removal of SNF and HLW by January 31, 1998, the Government did not commence performance on that date or by the date of the filing of this case. *See* Compl. ¶ 19. Moreover, the Government has not provided Plaintiff with a date certain on which it will begin disposal. *Id.*; *see also* Final Interpretation of Nuclear Waste Acceptance Issues, 60 FED. REG. 21,793, 21,794 (May 3, 1995) ("DOE currently projects that the earliest possible date for acceptance of waste for disposal at a repository is 2010."). The Government previously argued that its failure to meet the January 31, 1998 deadline to dispose of SNF and HLW was excused because the delay was unavoidable. *See Indiana Michigan Power Co.* v. *Dept. of Energy*, 88 F.3d 1272, 1274 (D.C.

---

[1] The facts recited herein were derived from: the March 2, 2001 Complaint ("Compl."); the Government's November 27, 2001 Motion to Dismiss Count Three ("Mot. to Dismiss"); Plaintiff's December 13, 2002 Response to the Government's Motion to Dismiss ("Pl. Resp."); the Government's January 30, 2003 Reply to Plaintiff's Response to the Motion to Dismiss ("Gov't Reply").

Cir. 1996) ("DOE concluded that it did not have an unconditional statutory or contractual obligation to accept high-level waste and spent fuel beginning January 31, 1998 in the absence of a repository or interim storage facility constructed under the NWPA.") (citing 60 FED. REG. at 21,793-94). The United States Court of Appeals for the District of Columbia Circuit, however, held that the contracts to dispose of SNF and HLW between the Government and utilities, created "an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." *Indiana Michigan Power Co.*, 88 F.3d at 1277. Furthermore, the United States Court of Appeals for the Federal Circuit, in *Northern States Power*, issued a writ of mandamus precluding DOE from arguing that its failure to meet the January 31, 1998 deadline was unavoidable. *See N. States Power Co.* v. *United States*, 128 F.3d 754, 760 (D.C. Cir. 1997) (holding that "petitioners' ability to enforce the contract would be frustrated if DOE were allowed to operate under a construction of the contract inconsistent with our prior conclusion that the NWPA imposes an [unconditional] obligation on DOE[.]").

**PROCEDURAL HISTORY**

Plaintiff filed a Complaint in the United States Court of Federal Claims on March 2, 2001. The case was assigned to the Honorable Lynn J. Bush. Count One alleged that the Government partially breached the Contract by failing to commence to disposal of SNF and HLW by January 31, 1998. *See* Compl. ¶¶ 23-24.

Count Two alleged that the Government breached an implied covenant of good faith and fair dealing by: (1) failing and refusing to make an effort to meet the January 31, 1998 deadline; (2) attempting to avoid its obligations as defined by the United States Court of Appeals for the District of Columbia Circuit; (3) failing to make any effort to dispose of Plaintiff's SNF and HLW or to provide Plaintiff with a firm date on which disposal will begin; and (4) by continuing to insist that Plaintiff meet its obligation under the Contract, without reciprocity. *See* Compl. ¶ 27.

Count Three alleged that the Government's failure to dispose of the SNF and HLW constitutes an unlawful taking of Plaintiff's vested contract and real property rights.[2] *See* Compl. ¶ 33. Moreover, the Government's failure to fulfill its obligation to begin disposing of Plaintiff's SNF and HLW "force[d] Plaintiff to provide storage of SNF on Plaintiff's real property and necessarily result[ed] in a taking of Plaintiff's property." Pl. Resp. at 2. Plaintiff seeks to establish damages, on all counts, at trial. *See* Compl. ¶¶ 34(a)-(c).

On November 27, 2001, the Government filed a Motion to Dismiss Count Three of the Complaint, arguing that Count Three failed to state a claim upon which relief can be granted,

---

[2] Plaintiff voluntarily has withdrawn the claimed takings of a vested contract right in Count Three. *See* Pl. Resp. at 1 n.1 ("In light of the [United States Court of Appeals for the] Federal Circuit's decision in *Castle* v. *United States*, 301 F.3d 1328 (Fed. Cir. 2002), Plaintiff withdraws its claim that the Government has taken Plaintiff's vested contract right.").

because Plaintiff's rights and remedies arise under the Contract and not the Constitution.[3] On December 13, 2002, Plaintiff filed an Opposition to the Government's Motion to Dismiss asserting that the portion of Count Three that alleged that the Government committed a taking of Plaintiff's real property without just compensation in violation of the Fifth Amendment adequately asserts a claim upon which relief can be granted. *See* Pl. Resp. at 1. On January 30, 2003, the Government filed a Reply to Plaintiff's Opposition.

On November 28, 2001, the Government filed a Motion for Partial Summary Judgment regarding the Plaintiff's greater than class C ("GTCC") radioactive waste arguments. On December 17, 2002, Plaintiff filed an Opposition to the Government's November 28, 2001 Motion for Partial Summary Judgment.

On December 20, 2001 the Government filed a Motion for Partial Summary Judgment regarding the rate of spent nuclear fuel acceptance. On December 17, 2002, Plaintiff filed a Cross-Motion and Response to the Government's December 20, 2001 Motion for Partial Summary Judgment.

On November 14, 2002, Plaintiff filed a Renewed Motion for Partial Summary Judgment on the issue of partial breach of contract. On December 16, 2002 the Government filed a Response to the Plaintiff's November 14, 2002 Motion.

On December 9, 2004, this case was reassigned to the undersigned judge.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2005). The Tucker Act, however, is only a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Testan*, 424 U.S. 392, 398 (1976) (citations omitted); *see also Perri* v. *United States*, 340 F.3d 1337, 1340 (Fed. Cir. 2003) (quoting *Testan*). Therefore, in order to pursue a substantive right, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages for the court to have jurisdiction. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money

[3] The Government incorrectly indicates that its Motion to Dismiss for Failure to State a Claim is filed pursuant to RCFC 12(b)(4). *See* Mot. to Dismiss at 1, 7-8. The court, however, notes that the Government correctly references RCFC 12(b)(6) in its later filing. *See* Gov't Reply at 17.

damages against the United States separate from the Tucker Act itself."); *see also Roth* v. *United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action, . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.") (citing *United States* v. *Mitchell*, 463 U.S. 205, 216-19 (1983); *Testan,* 424 U.S. at 398; *Collins* v. *United States,* 67 F.3d 284, 286 (Fed. Cir. 1995)).

In this case, Plaintiff has pled a contractual relationship with the Government. *See* Compl. ¶¶ 2, 5, 9; *see also Trauma Serv. Group* v. *United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("To show jurisdiction . . . [Plaintiff] must show that either an express or implied-in-fact contract underlies its claim."). Therefore, the court has jurisdiction to adjudicate Plaintiff's claims of breach.

**B. Legal Standards.**

**1. Standard Of Review For A Motion To Dismiss For Failure To State A Claim – RCFC 12(b)(6).**

In ruling on a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (citing *Scheuer* v. *Rhodes*, 416 U.S. 232, 236-37 (1974)) (selected citations omitted); *see also Brubaker Amusement Co., Inc.* v. *United States*, 304 F.3d 1349, 1355 (Fed. Cir. 2002) (explaining that when deciding a motion to dismiss for failure to state a claim, the court must assume that all well-pled factual allegations are true and draw all reasonable inferences in the non-movant's favor) (citations omitted). Dismissal for failure to state a claim under Rule 12(b)(6) "is proper only when a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Adams* v. *United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004) (quoting *Leider* v. *United States*, 301 F.3d 1290, 1295 (Fed. Cir. 2002)) (internal quotations omitted); *see also* RCFC 12(b)(6).

**2. Standard Relief On A Just Compensation Claim.**

Private property shall not be taken for "public use, without just compensation." U.S. Const. amend. V, cl. 4. The purpose of the Just Compensation Clause is to prevent the federal government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong* v. *United States*, 364 U.S. 40, 49 (1960); *see also Members of Peanut Quota Holders Ass'n, Inc.* v. *United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005) (quoting *Armstrong*). The United States Court of Appeals for the Federal Circuit has observed that whether a constitutional taking has occurred is a question of law based on "factual underpinnings." *Cienega Gardens* v. *United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003). To assist the court in conducting the required analysis, a two-part test has been established: 1) "the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment[;]" and 2) after having identified a property interest, the court must determine whether a taking occurred. *Am. Pelagic Fishing Co., L.P.* v. *United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (citing *Maritrans, Inc.* v. *United States*, 342 F.3d 1344, 1351 (Fed. Cir. 2003)); *see also Chancellor Manor* v. *United States*, 331 F.3d 891, 901-02 (Fed. Cir. 2003) (explaining the two-step analysis).

The United States Supreme Court has held that property rights are determined by "existing rules or understandings that stem from an independent source such as state law[.]" *Bd. of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972); *see also Members of Peanut Quota Holders Ass'n*, 421 F.3d at 1330 ("The parameters of a protected property interest are delimited by the law that creates the interest . . . and by existing rules and understandings and background principles derived from independent sources, such as state, federal, or common law[.]") (internal quotations omitted). Once a property right is identified, the court next must decide the nature of the taking, *i.e.*, whether the case presents a "classi[c] taking" in which the government "directly appropriates private property for its own use[,]" *E. Enterprises* v. *Apfel*, 524 U.S. 498, 522 (1998) (quoting *United States* v. *Sec. Indus. Bank*, 459 U.S. 70, 79 (1982)), or whether the "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good[,]" *Penn Cent. Transp. Co.* v. *New York*, 438 U.S. 104, 124 (1978).

The genesis of "regulatory takings" jurisprudence was Justice Holmes' opinion in *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393 (1922), in which the rhetorical, but substantively unhelpful dicta appears: "[I]f a regulation goes too far it will be recognized as a taking." *Id.* at 415. The United States Supreme Court has struggled over the last 83 years to provide meaningful context to what is "too far" by adopting and building on what it has described as an *"ad hoc"* analysis. *See Penn Cent.,* 438 U.S. at 124, 130-31 ("[T]his Court focuses . . . on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole[.]"). Where a taking is less than total, the United States Supreme Court has instructed the lower courts that the *Penn Central* analysis is the "proper framework." *Tahoe-Sierra Pres. Council, Inc*. v. *Tahoe Reg'l Planning Agency*, 535 U.S. 302, 331 (2002); *see also Lingle* v. *Chevron U.S.A. Inc.*, ___ U.S. ___, 125 S.Ct. 2074, 2081 (2005) (explaining that "regulatory takings challenges are governed by the standards set forth in *Penn Central*"). In rejecting a variety of "categorical" rules, the United States Supreme Court nevertheless conceded that "the duration of the restriction is one of the important factors that a court must consider in the appraisal of a regulatory takings claim, but with respect to that factor as with respect to other factors, the 'temptation to adopt what amount to *per se* rules in either direction must be resisted.'" *Id.* at 342 (quoting *Palazzolo* v. *Rhode Island*, 533 U.S.606, 636 (2001) (O'Connor, J., concurring)) (italics in original).

**C. Resolution Of The Government's Motion To Dismiss Count Three.**

Count Three of the Complaint alleges that the Government's failure to remove the SNF and HLW from Plaintiff's property has caused a physical taking of Plaintiff's real property rights. *See* Compl. ¶¶ 32, 33. Plaintiff sets forth two bases for its physical takings claim: 1) the Government has forced Plaintiff to bear the costs of additional on-site SNF and HLW storage for the public's benefit and; 2) the Government has forced Plaintiff to use its real property to store the SNF and HLW. *Id.*; *see also* Pl. Resp. at 1, 2, 7, 8.

The Government advances two arguments that it contends warrant dismissal of Count Three. *See* Mot. to Dismiss at 13-15. First, the Government insists that the SNF and HLW does not belong to the Government, because title will not pass until sometime after commencement of the operation of a permanent repository. *Id.* at 13, 14. Plaintiff, however, correctly points out that the Government

need not hold title to the SNF and HLW because a taking can be premised on actions that fall short of the acquisition or destruction of property, *i.e.* a categorical taking or a regulatory taking. *See Norman* v. *United States*, No. 05-5039, slip. op. at 13, *available at* 2005 WL 3078501 (Fed. Cir. Nov. 18, 2005) ("A 'categorical' taking is a regulatory taking in which government action deprives the landowner of all beneficial use of his property, such that the government action is the functional equivalent of a physical invasion.") (citing *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003 (1992)); *Air Pegasus of D.C., Inc.* v. United States, 424 F.3d 1206, 1213 (Fed. Cir. 2005) ("A compensable taking can occur not only through the government's physical invasion or appropriation of private property, . . . but also by government regulations that unduly burden private property interests[.]") (citing *Lucas*, 505 U.S. at 1014-15; *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); *Pennsylvania Coal Co.*, 260 U.S. at 393; *Cienega Gardens*, 265 F.3d at 1244); *see also Rickelshaus* v. *Monsanto Co.*, 467 U.S. 986, 1004 (1984) ("It has never been the rule that only governmental acquisition or destruction of the property of an individual constitutes a taking[.]"). The court, however, need not reach the issue of ownership because this argument, even if true, does not counsel for dismissal of Plaintiff's takings claim. Plaintiff has pled that it has an interest in real property and the Government has forced it to devote this property interest to on-site SNF and HLW storage for the public's benefit. *See* Compl. ¶¶ 2, 32; *see also* Pl. Resp. at 12-13 ("Plaintiff owns the real property site on which its nuclear power plaints stand and it is this real property interest . . . that has been taken by the Government in forcing the Plaintiff to provide storage for the SNF that DOE should have taken.").

Second, the Government complains that, because the alleged taking is "wholly dependent" upon the existence of the Standard Contract, Plaintiff only may pursue a claim for breach of contract. Mot. to Dismiss at 15; *see also* Gov't Reply at 7, 8. The Government accuses Plaintiff of advancing a takings claim that is "merely a redescription of its complaint about DOE's failure to satisfy its obligations under the Standard Contract." Gov't Reply at 6.

A takings claim is often limited where a litigant sets forth a viable breach of contract claim because "'[v]irtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of non performance.'" *Detroit Edison Co.* v. *United States*, 56 Fed. Cl. 299, 301-302 (Fed. Cl. 2003) (quoting *United States* v. *Winstar Corp.*, 518 U.S. 839, 919 (1996) (Scalia, J., concurring)). The United States Court of Federal Claims, however, "has recognized that vindication of *rights existing independently of the contract* at issue cannot be restricted to contractual remedies." *Detroit Edison Co.*, 56 Fed. Cl. at 302 (citing *Scan-Tech Sec., L.P.* v. *United States*, 46 Fed. Cl. 326, 342 (Fed. Cl. 2000) (selected citations omitted)) (emphasis added); *see also Maine Yankee Atomic Power* v. *United States*, 225 F.3d 1336, 1342-1343 (Fed. Cir. 2000) (expressly permitting Maine Yankee, another utility with a Standard Contract, to maintain both a breach of contract claim and a takings claim); *Consol. Edison Co.* v. *United States*, 67 Fed. Cl. 285 (Fed. Cl. 2005) ("At this point[, prior to trial], however, Consolidated Edison may proceed with both its takings and breach-of-contract claims concurrently."); *Pi Electronics Corp.* v. *United States*, 55 Fed. Cl. 279, 286 (Fed. Cl. 2003) (determining that the plaintiff's takings claim is not foreclosed by the existence of a contractual remedy, because the plaintiff "has a colorable argument that the market test contract did not create the right which [the] plaintiff alleges has been taken"). The Complaint pleads an interest in private property that allegedly predates the Contract and,

therefore, seeks a vindication of rights that may exist independently of the Contract.[4] *See* Compl. ¶¶ 2, 32; *see also* Pl. Resp. at 12-13.

In evaluating a motion to dismiss in a case with similar factual underpinnings, the United State Court of Federal Claims has stated that "where the Government has forced storage on another's private property the Just Compensation Clause is implicated." *Sacramento Mun. Util. Dist.* v. *United States*, 61 Fed. Cl. 438, 442-443 (Fed. Cl. 2004) (citing *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 779 U.S. 155, 164 (1980)) (selected citations omitted). The question of when a regulatory taking occurs "cannot be answered as a matter of absolute doctrine, but instead requires case by case adjudication: 'the question depends upon the particular facts.'" *Fla. Rock Indus., Inc.* v. *United States*, 18 F.3d 1560, 1570 (Fed. Cir. 1994) (citations omitted). Therefore, the question of "[w]hether a taking has occurred is a question of law based on factual underpinnings." *Members of Peanut Quota Holders Ass'n, Inc.*, 421 F.3d at 1329 (citing *Wyatt* v. *United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001)). Since Count Three alleges facts sufficient to state a takings claim, dismissal is not warranted at this juncture.

**CONCLUSION**

For the above stated reasons, the Government's November 27, 2001 Motion to Dismiss Count Three is **DENIED**.

**IT IS SO ORDERED.**

**s/SUSAN G. BRADEN**
**Judge**

---

[4] The court will address Plaintiff's takings claim only if the contract claims fail. *See* Pl. Resp. at 14 ("Plaintiff's takings claim will be ripe for review only after this Court has fully evaluated the remedies available to Plaintiff under the Standard Contract."); *see also Detroit Edison Co.*, 56 Fed. Cl. at 303 ("[T]he court views plaintiff's takings theory as an alternative to its contract claim, . . . not as a mechanism by which plaintiff may obtain remedies unavailable to it under the Standard Contract."); *Sinclair* v. *United States*, 49 Fed. Cl. 274, 280 n.7 (Fed. Cl. 2001) ("Plaintiff's takings theory need be addressed only if he fails on his contract claim.").